ANDRÉ BIROTTE JR
United States Attorney
SHERI PYM
Assistant United States Attorney
Chief, Riverside Branch Office
CHARLES E. PELL (Cal. State Bar No. 210309)
Assistant United States Attorney
Riverside Branch Office
     3880 Lemon Street, Suite 210
     Riverside, California 92501
     Telephone: (951) 276-6104
     Facsimile: (951) 276-6202
     Email:     Charles.E.Pell2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>     v.<br><br>NATHAN RAMON WELLS,<br><br>          Defendant. | No. ED CR 10-00006-VAP<br><br>PLEA AGREEMENT FOR DEFENDANT<br>NATHAN RAMON WELLS |

   1.   This constitutes the plea agreement between NATHAN RAMON WELLS ("defendant") and the United States Attorney's Office for the Central District of California ("the USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

PLEA

   2.   Defendant agrees to plead guilty to count one of the indictment in United States v. Nathan Ramon Wells, ED CR No. 10-00006-VAP.

NATURE OF THE OFFENSE

3. In order for defendant to be guilty of count one, which charges a violation of Title 18, United States Code, Section 32(a)(5), the following must be true: (1) Defendant willfully interfered with or disabled a person engaged in the authorized operation of an aircraft; (2) The aircraft was in the special aircraft jurisdiction of the United States; and (3) At the time that defendant acted, he acted with a reckless disregard for the safety of human safety. Defendant admits that defendant is, in fact, guilty of this offense as described in count one of the indictment.

PENALTIES

4. The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 32(a)(5), is: 20 years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

5. Supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

6. Defendant understands that, by pleading guilty,

defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that once the court accepts defendant's guilty plea, it will be a federal felony for defendant to possess a firearm or ammunition. Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

7. Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to removal, also known as deportation, which may, under some circumstances, be mandatory. The court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony conviction in this case. Defendant understands that by entering a guilty plea defendant waives any claim that unexpected immigration consequences may render defendant's guilty plea invalid.

## FACTUAL BASIS

8. Defendant and the USAO agree and stipulate to the statement of facts provided below. This statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the sentencing guideline factors

set forth in paragraph 12 below. It is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

On June 3, 2009, California Highway Patrol ("CHP") officers J. Stanton and D. Myers were assisting Cathedral City Police Department ("CCPD") with a possible residential burglary call. While those two CHP officers orbited CHP aircraft N108HP, a Eurocopter AS350B3 helicopter, approximately 700 feet above ground level, defendant used a green laser multiple times to illuminate the cockpit of the police helicopter with a bright green light, which caused both CHP officers to look away, and therefore interfered with their operation of the aircraft. When defendant lasered the CHP helicopter, it was in the special aircraft jurisdiction of the United States.

The officers then used their NightSun light to light up the vehicle from which the laser-beam had emanated and followed it throughout Cathedral City. The vehicle, which defendant was driving, ultimately stopped at a residence, and defendant exited the vehicle. CCPD officer D. Hodge arrived at the location and ordered the defendant to the ground. As defendant went to the ground, officer Hodge observed a black pen-like item in defendant's hand. Officer Hodge ordered defendant to drop the pen-like item, which defendant did. Officer Hodge confirmed that the pen-like item was a laser.

On January 26, 2010, FBI special agent A. Davis interviewed defendant, and defendant confessed to pointing the laser at the police helicopter. Specifically, defendant admitted that he was

4

driving his car around the "Dream Homes" neighborhood in Cathedral City and noticed a helicopter hovering over that neighborhood. Defendant admitted that he pointed a green laser at the helicopter, which he knew was a police helicopter. When defendant pointed the laser at the police helicopter, defendant acted with a reckless disregard for the safety of human life.

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

9. By pleading guilty, defendant gives up the following rights:

    a) The right to persist in a plea of not guilty.

    b) The right to a speedy and public trial by jury.

    c) The right to the assistance of legal counsel at trial, including the right to have the Court appoint counsel for defendant for the purpose of representation at trial. (In this regard, defendant understands that, despite his plea of guilty, he retains the right to be represented by counsel -- and, if necessary, to have the court appoint counsel if defendant cannot afford counsel -- at every other stage of the proceeding.)

    d) The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

    e) The right to confront and cross-examine witnesses against defendant.

    f) The right, if defendant wished, to testify on defendant's own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

    g) The right not to be compelled to testify, and, if

defendant chose not to testify or present evidence, to have that choice not be used against defendant.

By pleading guilty, defendant also gives up any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

## WAIVER OF DNA TESTING

10. Defendant has been advised that the government has in its possession the following items of physical evidence that could be subjected to DNA testing:

> one black, pen-like laser device

Defendant understands that the government does not intend to conduct DNA testing of any of this item. Defendant understands that, before entering a guilty plea pursuant to this agreement, defendant could request DNA testing of evidence in this case. Defendant further understands that, with respect to the offense to which defendant is pleading guilty pursuant to this agreement, defendant would have the right to request DNA testing of evidence after conviction under the conditions specified in 18 U.S.C. § 3600. Knowing and understanding defendant's right to request DNA testing, defendant voluntarily gives up that right with respect to both the specific items listed above and any other items of evidence there may be in this case that might be amenable to DNA testing. Defendant understands and acknowledges that by giving up this right, defendant is giving up any ability to request DNA testing of evidence in this case in the current proceeding, in any proceeding after conviction under 18 U.S.C. § 3600, and in any other proceeding of any type. Defendant

further understands and acknowledges that by giving up this right, defendant will never have another opportunity to have the evidence in this case, whether or not listed above, submitted for DNA testing, or to employ the results of DNA testing to support a claim that defendant is innocent of the offense to which defendant is pleading guilty.

## SENTENCING FACTORS

11. Defendant understands that the Court is required to consider the factors set forth in 18 U.S.C. § 3553(a)(1)-(7), including the kinds of sentence and sentencing range established under the United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines"), in determining defendant's sentence. Defendant further understands that the Sentencing Guidelines are advisory only, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court may be free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crime of conviction.

12. Defendant and the USAO agree and stipulate to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level : | 18 | U.S.S.G. § 2A5.2(a)(2) |
| Acceptance of Responsibility: | -3 | U.S.S.G. § 3E1.1 |
| **Total Offense Level:** | **15** | |

The USAO will agree to a downward adjustment for acceptance of responsibility (and, if applicable, move for an additional level under § 3E1.1(b)) only if the conditions set forth in paragraph 16 are met. Subject to paragraphs 14 and 15, defendant and the USAO agree not to seek, argue, or suggest in any way, either

7

orally or in writing, that any other specific offense characteristics, adjustments, or departures relating to the applicable Offense Level be imposed. If, however, after signing this agreement but prior to sentencing, defendant were to commit an act, or the USAO were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the USAO, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set forth in that section.

13. There is no agreement as to defendant's criminal history or criminal history category.

14. Defendant and the USAO also agree and stipulate that, taking into account the factors listed in 18 U.S.C. § 3553(a)(1)-(7), a reasonable sentence for defendant is one in the Guidelines range equivalent to an offense level of 13 (two levels below that otherwise provided by the Guidelines) and the applicable criminal history category as determined by the Court, and agree that defendant should be sentenced in accordance with this two-levels below-Guidelines sentencing range. Therefore, subject to paragraph 15, defendant and the USAO agree not to seek, argue, or suggest in any way, either orally or in writing, that the Court impose a sentence outside the sentencing range corresponding to a total offense level of 13 and the criminal history category determined by the Court, except that defendant reserves the right to argue for a split-sentence, that is, a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement (residence in a community treatment center, halfway house, or similar facility)

or home detention, provided that at least one-half of the minimum term is satisfied by imprisonment.

15. The stipulations in this agreement do not bind either the United States Probation Office or the Court. Both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court, (b) correct any and all factual misstatements relating to the calculation of the sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations are not error, although each party agrees to maintain its view that the calculations in paragraph 12 are consistent with the facts of this case.

## DEFENDANT'S OBLIGATIONS

16. Defendant agrees that he will:

   a) Plead guilty as set forth in this agreement.

   b) Not knowingly and willfully fail to abide by all sentencing stipulations contained in this agreement.

   c) Not knowingly and willfully fail to: (i) appear for all court appearances, (ii) surrender as ordered for service of sentence, (iii) obey all conditions of any bond, and (iv) obey any other ongoing court order in this matter.

   d) Not commit any crime; however, offenses which would be excluded for sentencing purposes under U.S.S.G. § 4A1.2(c) are not within the scope of this agreement.

   e) Not knowingly and willfully fail to be truthful at all times with Pretrial Services, the U.S. Probation Office, and the Court.

   f) Pay the applicable special assessment at or before

the time of sentencing unless defendant lacks the ability to pay and submits a completed financial statement (form OBD-500) to the USAO prior to sentencing.

## THE USAO'S OBLIGATIONS

17. If defendant complies fully with all defendant's obligations under this agreement, the USAO agrees:

    a) To abide by all sentencing stipulations contained in this agreement.

    b) At the time of sentencing to move to dismiss the remaining count of the indictment as against defendant. Defendant agrees, however, that at the time of sentencing the Court may consider the dismissed count in determining the applicable Sentencing Guidelines range, where the sentence should fall within that range, the propriety and extent of any departure from that range, and the determination of the sentence to be imposed after consideration of the Sentencing Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

    c) At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, to recommend a two-level reduction in the applicable sentencing guideline offense level, pursuant to U.S.S.G. § 3E1.1, and to recommend and, if necessary, move for an additional one-level reduction if available under that section.

    d) To recommend that defendant be sentenced to a term of imprisonment at the low end of the applicable Sentencing Guidelines imprisonment range that is two offense levels below that calculated by the Court, provided that the total offense

level as calculated by the Court is 15 or higher and provided that the Court does not depart downward in offense level or criminal history category. For purposes of this agreement, the low end of the Sentencing Guidelines imprisonment range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A.

## BREACH OF AGREEMENT

18. If defendant, at any time after the execution of this agreement, knowingly violates or fails to perform any of defendant's agreements or obligations under this agreement ("a breach"), the USAO may declare this agreement breached. If the USAO declares this agreement breached at any time following its execution, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all of its obligations under this agreement.

19. Following the Court's finding of a knowing and willful breach of this agreement by defendant, should the USAO elect to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a) Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the commencement of any such prosecution or action.

b) Defendant gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such prosecution, except to the extent that such defenses existed as of the date of defendant's

signing this agreement.

      c) Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the stipulated factual basis statement in this agreement; and (iii) any evidence derived from such statements, are admissible against defendant in any such prosecution of defendant, and defendant shall assert no claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from any statements should be suppressed or are inadmissible.

### LIMITED MUTUAL WAIVER OF APPEAL AND COLLATERAL ATTACK

20. Defendant gives up the right to appeal any sentence imposed by the Court and the manner in which the sentence is determined, provided that (a) the sentence is within the statutory maximum specified above and is constitutional, and (b) the Court imposes a sentence within or below the range corresponding to a total offense level of 15, and the applicable criminal history category as determined by the Court. Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly-discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction. Notwithstanding the foregoing, defendant retains the ability to appeal the conditions of supervised release imposed by the Court, with the

exception of the following: conditions set forth in General Orders 318 and 01-05 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

21. The USAO gives up its right to appeal the sentence, provided that (a) the sentence is within the statutory maximum specified above and is constitutional, and (b) the Court imposes a sentence within or above the range corresponding to a total offense level of 15, and the applicable criminal history category as determined by the Court.

## RESULT OF VACATUR, REVERSAL OR SET-ASIDE

22. Defendant agrees that if any count of conviction is vacated, reversed, or set aside, the USAO may: (a) ask the Court to re-sentence defendant on any remaining count of conviction, with both the USAO and defendant being released from any stipulations regarding sentencing contained in this agreement, (b) ask the Court to void the entire plea agreement and vacate defendant's guilty plea on any remaining count of conviction, with both the USAO and defendant being released from all of their obligations under this agreement, or (c) leave defendant's remaining conviction, sentence, and plea agreement intact. Defendant agrees that the choice among these three options rests in the exclusive discretion of the USAO.

## COURT NOT A PARTY

23. The Court is not a party to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' stipulations. Even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from

13

any stipulation, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement. No one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

## NO ADDITIONAL AGREEMENTS

24. Except as set forth herein, there are no promises, understandings or agreements between the USAO and defendant or defendant's counsel. Nor may any additional agreement, understanding or condition be entered into unless in a writing signed by all parties or on the record in court.

## PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

25. The parties agree and stipulate that this Agreement will be considered part of the record of defendant's guilty plea hearing as if the entire Agreement had been read into the record of the proceeding.

This agreement is effective upon signature by defendant and an Assistant United States Attorney.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF CALIFORNIA

ANDRÉ BIROTTE JR
United States Attorney

_/s/ Charles E. Pell_     7/29/10
CHARLES E. PELL     Date
Assistant United States Attorney

1    I have read this agreement and carefully discussed every
2 part of it with my attorney.  I understand the terms of this
3 agreement, and I voluntarily agree to those terms.  My attorney
4 has advised me of my rights, of possible defenses, of the
5 sentencing factors set forth in 18 U.S.C. § 3553(a), of the
6 relevant Sentencing Guidelines provisions, and of the
7 consequences of entering into this agreement.  No promises or
8 inducements have been given to me other than those contained in
9 this agreement.  No one has threatened or forced me in any way to
10 enter into this agreement.  Finally, I am satisfied with the
11 representation of my attorney in this matter.

_Nathan Wells_                          _7/28/10_
NATHAN RAMON WELLS                       Date
Defendant

15    I am NATHAN RAMON WELLS's attorney.  I have carefully
16 discussed every part of this agreement with my client.  Further,
17 I have fully advised my client of his rights, of possible
18 defenses, of the sentencing factors set forth in 18 U.S.C.
19 § 3553(a), of the relevant Sentencing Guidelines provisions, and
20 of the consequences of entering into this agreement.  To my
21 knowledge, my client's decision to enter into this agreement is
22 an informed and voluntary one.

_Angela C.C. Viramontes_                 _7-28-10_
ANGELA C.C. VIRAMONTES                   Date
Counsel for Defendant
NATHAN RAMON WELLS